IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

THE CITY OF NORFOLK, VIRGINIA
and
RICHARD J. HRYNIEWICH,

            Plaintiffs,

v.                                                       Civil Action No. 2:17cv159

SAFE BOATS INTERNATIONAL, LLC
and
WILLARD MARINE, INC.,

            Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This contribution and indemnity suit arises from a maritime accident involving a police patrol boat, and related personal injury litigation now pending in Norfolk Circuit Court. The suit in state court, filed by two workers injured in the accident, seeks damages from the City of Norfolk ("the City") and Officer Richard Hryniewich ("Officer Hryniewich"), the operator of the patrol boat. Defendant Safe Boats International, LLC's ("SBI"), the manufacturer of the boat, has filed a Motion to Dismiss (ECF No. 11) this case, and argues that no claim for contribution or indemnity has accrued. See Def.'s Mem. Supp. Mot. to Dismiss (ECF No. 9). Plaintiffs argue that the claims should survive because they have already incurred legal fees from defending the underlying personal injury suits that followed the accident. See Pls.' Mem. Opp'n Mot. to Dismiss (ECF No. 13). Additionally, the City and Hryniewich have filed a Motion for Leave to File Supplemental Complaint [hereinafter "Motion for Leave"] (ECF No. 19), to add claims for contribution and indemnity against SBI, in the event that the City is found liable for breach of a

1

ship repair contract it entered into with Willard Marine, Inc., before the accident. See Pls.' Mem. Supp. Mot. for Leave (ECF No. 20). SBI also opposes the supplemental complaint, arguing the proposed new claims are futile because indemnity for contractual liability is not a cognizable remedy in admiralty. See Def.'s Mem. Opp'n Mot. for Leave (ECF No. 21).

The district court referred the Motion to Dismiss pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), and the Motion for Leave to amend was referred by standing order. Both motions have been fully briefed, and on August 11, 2017, the court heard oral argument. Having considered the briefs and the parties' arguments, for the reasons detailed below, the court recommends that the Motion for Leave (ECF No. 19) be denied as futile, and the Motion to Dismiss (ECF No. 11) granted and the case dismissed without prejudice.

## I. BACKGROUND

### A. Factual Background

This suit stems from an accident involving a City of Norfolk patrol boat, MARINE 5 ("the Vessel"), which capsized during a high-speed turn, injuring two of her occupants. The City of Norfolk ("the City") purchased the Vessel from SBI in 2007. See Compl. ¶ 7 (ECF No. 1). SBI is a Washington based boat manufacturer that specializes in "high-performance tactical security vessels." Id. at ¶ 8. Among other capabilities, the Vessel purchased by the City was intended for maritime security operations that would require it to perform high-speed maneuvers. Id. The Vessel was originally equipped by the manufacturer with two 250-hp engines. Id. at ¶ 19. In 2014, the City contracted with Willard Marine, Inc. ("Willard") to refit the Vessel with two 300-hp engines, install a new steering system, and replace two of her crew seats. See id. ¶ 23. The Vessel was allegedly designed by SBI to safely handle twin outboard engines of up to 300-hp and turn sharply at full-throttle. Id. at ¶¶ 20, 37.

The City's written contract ("Upgrade Contract") required Willard to "[p]erform [a] sea trial with [a] [Norfolk Harbor Patrol] representative" and to "[t]est and adjust system to specification." See Upgrade Contract 6-7 (ECF No. 1-2). The sea trial was also an "acceptance trial," meaning that only upon satisfactory completion of the trial would the City's representatives accept redelivery of the Vessel. See Compl. ¶ 30 (ECF No. 1). After the repower and refit work was complete, two Willard employees, Timothy Pridemore ("Pridemore") and David Glover ("Glover"), brought the Vessel to Willoughby Bay in Norfolk on March 21, 2014, to conduct the sea trial required by the Upgrade Contract. See id. at ¶ 25. The Vessel had apparently not been tested prior to that day. Id. at ¶ 29. In addition to the two Willard employees, three Norfolk Police officers participated in the sea trial, including Officer Hryniewich who was operating the Vessel during the test.

At the helm, Officer Hryniewich began testing the Vessel's maneuverability and performance. Id. at ¶ 31. After testing the engines at full-throttle, Officer Hryniewich reported that the Vessel's steering felt "unacceptably stiff." Id. at ¶ 32. One of the Willard employees, Glover, explained that the stiffness was a natural byproduct of the steering system replacement. Id. at ¶ 33. As a result of the stiffness, the City's representatives decided to conduct a series of turns to test the Vessel's steering. Id. at ¶ 34. While at three-quarters throttle, Officer Hryniewich executed a sharp right turn which caused the Vessel to violently capsize. See id. ¶ 40. The accident injured the passengers on board, including Pridemore and Glover, and caused significant damage to the Vessel. Id. at ¶¶ 44-49.

**B.     Procedural History**

Two years after the accident, Pridemore and Glover filed separate personal injury actions against the City and Officer Hryniewich in the Circuit Court for the City of Norfolk and in this

The City's written contract ("Upgrade Contract") required Willard to "[p]erform [a] sea trial with [a] [Norfolk Harbor Patrol] representative" and to "[t]est and adjust system to specification." See Upgrade Contract 6-7 (ECF No. 1-2). The sea trial was also an "acceptance trial," meaning that only upon satisfactory completion of the trial would the City's representatives accept redelivery of the Vessel. See Compl. ¶ 30 (ECF No. 1). After the repower and refit work was complete, two Willard employees, Timothy Pridemore ("Pridemore") and David Glover ("Glover"), brought the Vessel to Willoughby Bay in Norfolk on March 21, 2014, to conduct the sea trial required by the Upgrade Contract. See id. at ¶ 25. The Vessel had apparently not been tested prior to that day. Id. at ¶ 29. In addition to the two Willard employees, three Norfolk Police officers participated in the sea trial, including Officer Hryniewich who was operating the Vessel during the test.

At the helm, Officer Hryniewich began testing the Vessel's maneuverability and performance. Id. at ¶ 31. After testing the engines at full-throttle, Officer Hryniewich reported that the Vessel's steering felt "unacceptably stiff." Id. at ¶ 32. One of the Willard employees, Glover, explained that the stiffness was a natural byproduct of the steering system replacement. Id. at ¶ 33. As a result of the stiffness, the City's representatives decided to conduct a series of turns to test the Vessel's steering. Id. at ¶ 34. While at three-quarters throttle, Officer Hryniewich executed a sharp right turn which caused the Vessel to violently capsize. See id. ¶ 40. The accident injured the passengers on board, including Pridemore and Glover, and caused significant damage to the Vessel. Id. at ¶¶ 44-49.

**B.     Procedural History**

Two years after the accident, Pridemore and Glover filed separate personal injury actions against the City and Officer Hryniewich in the Circuit Court for the City of Norfolk and in this

court. See, e.g., Glover v. City of Norfolk, No. 2:17-cv-109; Pridemore v. City of Norfolk, No. 2:17-cv-110. The City and Office Hryniewich filed motions to dismiss or stay both personal injury actions in federal court on abstention principles in light of the pending suits in state court. On July 24, 2017, District Judge Henry Coke Morgan granted the motions in part, staying Pridemore and Glover's federal personal injury suits until the Norfolk Circuit Court rules on the City and Officer Hryniewich's Plea in Bar in state court. See Order, Glover v. Hryniewich et al., Pridemore v. Hryniewich et al., Nos. 2:17cv109, 2:17cv110 (E.D. Va. July 24, 2017) (ECF No. 11).

Plaintiffs also filed this stand-alone action seeking contribution and indemnity from SBI and Willard in the event the City and/or Officer Hrynewich are found liable in the underlying personal injury suits. Plaintiffs assert that SBI must indemnify them or pay damages in contribution because the Vessel was defectively designed for the rated horsepower. SBI moved to dismiss this action because Plaintiffs have not yet been found liable or settled any claims by the injured Willard employees, and thus have incurred no loss which would trigger a claim for indemnity. See Mot. to Dismiss (ECF No. 11). After Plaintiffs filed this suit, Willard filed a counterclaim seeking payment of $68,418.88 – the unpaid costs of the Upgrade Contract it entered into with the City.[1] Answer and Counterclaim (ECF No. 16). Plaintiffs then moved for leave to supplement their Complaint in order to add three additional claims for contribution and indemnity against SBI, seeking indemnity for monies it would be obligated to pay Willard under the Upgrade Contract. See Mot. for Leave (ECF No. 19).

## II. **STANDARD OF REVIEW**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading fails

---

[1] Willard has filed the same counterclaim in both of the state court actions.

to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. Twombly, 550 U.S. at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not state a claim. Iqbal, 556 U.S. at 678.

The United States Supreme Court has described the motion to dismiss analysis in two parts. First, the court must accept the allegations of fact as true. Id. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations. Iqbal, 556 U.S. at 678-79. After reviewing the allegations, the court must then consider whether they are sufficient to state a plausible claim for relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Leave to amend a complaint is ordinarily liberally granted. See Fed. R. Civ. P. 15(a)(2). But a court may deny leave to amend a complaint if the amendment would be futile. Foman v. Davis, 83 S. Ct. 227, 230 (1962). An amendment is futile if the proposed amendment fails to

state a claim for relief. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). In other words, the standard described above for addressing a 12(b)(6) motion to dismiss applies to the City's motion for leave to supplement the complaint, as the Defendant has asserted futility. See id.

### III. ANALYSIS

#### A. Motion to Dismiss

Plaintiffs' originally filed three claims against SBI for contribution and indemnity based on theories of general maritime products liability, strict products liability, and breach of warranty. Specifically, Plaintiffs argue that if they are found liable to Pridemore and Glover in the underlying personal injury suits, they are entitled to contribution and indemnity from SBI because the company's defectively designed product – the Vessel – was the cause of the accident. SBI argues that any stand-alone claim for indemnity or contribution has not accrued because Plaintiffs have not been found liable, settled, or been caused to pay out any claim for damages. As a result, SBI contends that Plaintiffs' claims against it should be dismissed. The court agrees.

"When a claim for indemnity or contribution is filed as a separate cause of action, it does not accrue until the person seeking the relief has paid more than his or her share of the obligation." Virginia Int'l Terminals, Inc. v. Ceres Marine Terminals, Inc., 879 F. Supp. 31, 33 (E.D. Va. 1995). In Ceres, an employee of a marine terminal operated by Ceres brought an action for personal injury against another terminal, Virginia International Terminals ("VIT"), after a work injury. VIT brought a separate action against Ceres, claiming contribution and indemnity for the employee's injuries. This court held that under Virginia common law, claims for contribution and indemnity, when brought in a stand-alone action, do not accrue until a party

has been made to pay out some claim for injuries to another person. See id. As the court reasoned, this common law rule was distinct from Virginia and Federal procedural rules that allowed for contribution and indemnity actions to be asserted as third-party claims prior to a finding of liability or payment of damages. Id. at 32-33 (citing Va. Code Ann. § 8.01-281; Fed. R. Civ. P. 14).

There is no question that the Federal Rules of Civil Procedure would allow the City and Officer Hryniewich to file a third-party claim against SBI in the now-stayed personal injury suits pending in this court. See Fed. R. Civ. P. 14 ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.") (emphasis added); see also Ceres, 879 F. Supp. at 33. But Plaintiffs brought their claims for contribution and indemnity in a stand-alone action, separate from the underlying personal injury actions.[2] Thus, Ceres is directly on point. Plaintiffs have not been found liable for the injuries for which they seek indemnity and contribution. Nor have they entered into any settlement to resolve the underlying plaintiffs' claims. Although Plaintiffs argue that Ceres is not applicable because the court applied Virginia common law, they have failed to cite any maritime law that holds differently. And when there is no maritime rule governing the issue, state common law may apply. See Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc., 160 F.3d 170, 174 (4th Cir. 1998). Moreover, the same principle – that an action for contribution and indemnity does not accrue until a party has paid out a claim for damages – has been applied by this court in other maritime cases. See, e.g., Norfolk Dredging Co. v. City of Chesapeake, No. 2:07cv130, 2007 WL 2126293 *1, *3-4 (E.D. Va. July 20, 2007) (holding that

---

[2] See Glover v. Hryniewich et al., No. 2:17cv109 (E.D. Va.); Pridemore v. Hryniewich et al., No. 2:17cv110 (E.D. Va.).

7

stand-alone maritime claims for contribution and indemnity were not ripe until the claimant had paid damages).

Plaintiffs' also argue that their claims have accrued because they have incurred legal fees in defending the actions. This argument is also unavailing. To begin with, the case cited by Plaintiffs does not stand for the proposition that simply incurring attorney's fees in defense of a claim gives rise to a present right to contribution and indemnity in a stand-alone action. See Northwest Airlines, Inc. v. Glenn L. Martin, Co., 161 F. Supp. 452 (D. Md. 1958). In Northwest Airlines, the court held that the right to contribution arose when a party made settlement payments (although no judgment had entered), because "limitations begin to run from, the time of payment in excess of plaintiff's proportionate share. . . ." Id. at 458. In this case, Plaintiffs have not settled with Pridemore and Glover. While they have incurred attorney's fees defending the underlying injury claims, those fees will not trigger any right to indemnity in a stand-alone claim until the underlying claim is resolved by settlement or entry of judgment. Unlike settlement payments, parties can incur attorney's fees related to a case long before any action is filed or resolution is reached. In fact, fees are frequently incurred before any indemnifiable claim is asserted. To hold that simply incurring of attorney's fees triggered a right to indemnity could create myriad of obstacles to orderly administration of such claims which the court is not prepared to endorse. A better rule in stand-alone actions for indemnity, both in terms of judicial economy and affording substantial justice to the parties, is that an action for attorney's fees related to the indemnifiable claim is not ripe until that underlying claim is resolved.

Because SBI has not been found liable, in whole or in part, for the injuries that resulted from the accident, Plaintiffs' claims for contribution and indemnity are not ripe and their stand-alone indemnity claim should be dismissed.

## B. Motion for Leave to File Supplemental Complaint

In response to a counterclaim filed by Willard for breach of contract, Plaintiffs also seek to add claims for contribution and indemnity against SBI in the event they are held liable to Willard for the cost of the upgrades made to the Vessel prior to the accident. Specifically, Plaintiffs' supplemental claims allege that SBI should have to indemnify them for the balance of the Upgrade Contract because the Vessel was a defective product and SBI had a duty to warn that upgrading the engines to 300-hp would make it unsafe. SBI argues that the claims are futile because implied indemnity and contribution are not available remedies for contractual liability under maritime law. As a result, SBI argues that Plaintiffs' motion to file supplemental claims should be denied. The court agrees.

A review of the law on contribution and indemnity makes clear the futility of Plaintiffs' claims for indemnity on their contract with Willard. With respect to contribution:

> Contribution is a cause of action that arises when a <u>tortfeasor</u> pays more than his pro rata share of a judgment. Although contribution is an inchoate right when the <u>underlying tort</u> giving rise to <u>common liability</u> occurs, the remedy is not available until the tortfeasor pays more than his share of the judgment.

Thomas J. Schoenbaum, Admiralty and Maritime Law § 5-19 (5th ed. 2011) (emphasis added). In other words, a claim for contribution requires that there be an underlying tort, and that the underlying tort gives rise to common or shared liability. Both of those elements are missing in the claims asserted by Willard. Willard's counterclaim alleged breach of contract, not a tort – it is based on the City's alleged failure to pay a liquidated sum it promised to Willard in exchange for work performed on the Vessel. And any breach of the Upgrade Contract would not give rise to common liability between the City and SBI. Indeed, SBI was not a party to the Upgrade Contract, and thus could not be liable for a failure to perform a provision of that contract. Plaintiffs' claim for contribution is futile.

The doctrine of indemnity is similarly inapplicable, as its purpose is to shift the entire amount of loss from one party to another based on an agreement or actual culpability for the indemnified injury. See id. There are three types of indemnity in admiralty law: (1) Ryan indemnity, based on a relationship between the parties; (2) tort indemnity; and (3) contract indemnity. Id. None apply in this case.

The first type of maritime indemnity – Ryan indemnity – comes from the Supreme Court's decision in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124 (1956). In Ryan, the Supreme Court recognized an implied warranty of workmanlike performance that arises is every maritime contract. Id. at 133. However, at least in the Fourth Circuit, Ryan only applies where a party is seeking indemnity for personal injury liability, not liability for breaching a contract (i.e., economic loss). See Maersk Line Ltd. v. Care 271 F. Supp. 2d 818, 826 (E.D. Va. 2003). Plaintiffs' supplemental claims seek indemnity for their own alleged breach of contract, not personal injury, thus the theory of indemnity espoused in Ryan does not apply.

The second type of maritime indemnity is tort indemnity. "Tort indemnity . . . is a doctrine that was developed by courts to allow the total loss to be allocated to one tortfeasor in a joint liability situation where the negligence or fault of one tortfeasor was much greater compared to the fault of the other." Admiralty and Maritime Law § 5-19. "Any noncontractual right to indemnity arises out of the tortious conduct upon which the indemnitee's liability was established." White v. Johns-Manville Corp., 662 F.2d 243, 247 (4th Cir. 1981). But in this case, Plaintiffs' supplemental claims do not seek indemnity for a tort because Willard's counterclaim does not allege a tort – it alleges a breach of contract. Thus, the right to indemnity asserted in the proposed supplemental compant would not "arise[] out of the tortious conduct

upon which the indemnitee's liability was established." Id. Accordingly, tort indemnity is not applicable in this case.

The final type of admiralty indemnity is contractual indemnity – that is, a right to indemnity created by contract. "The courts have consistently held that in the absence of an express or implied contract of indemnity, or in the absence of the indemnitor's liability to the injured party, there can be no recovery for indemnity." Wallenius Bremen G.m.b.H. v. U.S., 409 F.2d 994, 1969 A.M.C. 758, 763 (4th Cir. 1969) (citations omitted). Plaintiffs have not alleged in their original or proposed supplemental complaint that there was any contract, implied or express, between the City and SBI that would obligate either to indemnify the other for breach of a contract with a third-party. And while certain claims (i.e., personal injury) may be implicitly indemnifiable under theories of maritime products liability, no rule of maritime law would make SBI an indemnitor for the City's contractual liability to Willard. Accordingly, contractual indemnity does not apply to the supplemental claims Plaintiffs seek to add.

The law does not permit Plaintiffs to receive contribution or indemnity for the alleged breach of its contract with Willard. "[N]either contribution nor indemnity may be awarded without the support of liability on the part of the indemnitor to the person injured." Wallenius Bremen G.m.b.H. v. U.S., 409 F.2d 994, 1969 A.M.C. 758, 763 (4th Cir. 1969). Absent a contract, "indemnity may be allowed only if the person from whom indemnity is sought . . . owed a duty of his own to the injured person." Id. at 764. With regard to the supplemental complaint, the injured party is Willard. Even assuming that SBI created a defective product or should have warned the City of the danger associated with upgrading the Vessel's engines,

neither would cause SBI to be liable to Willard on the City's Upgrade Contract because SBI owed Willard no duty.[3]

Because no theory of contribution or indemnity applies to the supplemental claims Plaintiffs seek to bring against SBI, the Motion for Leave should be denied as futile.

## IV. **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that SBI's Motion to Dismiss (ECF No. 11) be GRANTED, and Plaintiffs' Motion for Leave to File Supplemental Complaint (ECF No. 19) be DENIED, and the case dismissed without prejudice, pending the outcome of the underlying personal injury litigation.

## V. **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

---

[3] The City may, of course, defend the contract claims on the basis that Willard should have known of the defect, or – more simply – that the repairs were never accepted as a result of a failed sea trial. See Compl. ¶ 30 (ECF No. 1) (alleging that redelivery – thus completion of the contract – was conditioned on a successful sea trial). Similarly, the City could presumably bring a claim for damages against SBI based on the sale of the Vessel, which the City alleges was defective. But none of these potential claims would result in SBI being liable for the City's alleged breach of its contract with Willard.

12

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

August 25, 2017
Norfolk, Virginia